# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GLENN CARPENTER, )
)
Plaintiff, )
)                C.A. No.: N23C-06-081 FJJ
v. )
)
LIBERTY MUTUAL INSURANCE )
COMPANY, and LM GENERAL )
INSURANCE COMPANY, )
)
Defendants. )

Submitted: January 10, 2025
Decided: January 16, 2025

**OPINION AND ORDER**
*on Plaintiff's Motion for a New Trial and/or Additur*

**DENIED**

*Daulton Gregory, Esquire and Bayard Marin,* Marin & Gregory, LLC, Wilmington, DE, *Attorneys for Plaintiff.*

*Karine Sarkisian, Esquire and Elizabeth Chalik,* Kennedy's CMK LLP, Wilmington, DE, *Attorneys for Defendant*

**Jones, J.**

This underinsured motorist claim proceeded to a jury trial. The jury returned a verdict of $5,000. Since plaintiff had recovered $25,000 from the tortfeasor, judgement was entered in favor of the Defendant carrier. Plaintiff follows the jury's verdict with this motion for a New Trial and/or Additur. For the reasons stated below, the Motion is denied.

## STANDARD OF REVIEW

When considering a motion for a new trial under Rule 59, the Court must appreciate that "[t]raditionally, the Court's power to grant a new trial has been exercised cautiously with extreme deference to the findings of the jury."[1] Further, "when the case involved a controverted issue of fact in which the evidence is conflicting and out of the conflict may be gathered sufficient evidence to support a verdict for either party, the issue of fact will be left severely to the jury …."[2] The Court will not upset the verdict of a jury unless "the evidence preponderates so heavily against the jury verdict that a reasonable juror could not have reached the result."[3] Stated differently, a jury's award is presumed correct and just unless it is so grossly out of proportion to the evidence presented as to shock the Court's conscience and sense of justice.[4]

---

[1] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. Super. 1997) (internal citations omitted).
[2] *Storey v. Camper*, 401 A.2d 458, 462 (Del. 1979).
[3] *Id.* at 465.
[4] *See Porter v. Murphy*, 2001 WL 1738872, at *1 (Del. Super. 2001).

2

## ANALYSIS

Plaintiff's first argument is that the parties stipulated that the value of Plaintiff's injuries exceeded $25,000. This assertion is simply incorrect. The parties stipulated that the plaintiff had received the full insurance limits available to the tortfeasor, which were $25,000. This stipulation was done to ensure that Plaintiff met his burden of showing that all liability insurance available to the tortfeasor had been exhausted. The stipulation entered by the parties in no way shape or form set a floor on the value of Plaintiff's damages. The fact that this complaint was originally filed in Federal District Court where Plaintiff had to allege that the amount in controversy exceeds the diversity threshold limit of $75,000 also does not set a floor for the value. The threshold diversity value is Plaintiff's view of the case; it is not Defendant's view nor is it the jury's view. In short it plays no role in establishing the ultimate value of the claimed unliquidated damages.

Plaintiff next takes issue with the testimony of Matthew Budway. Dr. Budway was Defendant's medical expert witness. The motion claims that Defendant failed to disclose the medical images or that Dr. Budway's opinion was based on such imaging records. The motion further claims that defendant failed to supplement the disclosure of this same testimony from Dr. Budway before trial. The motion asserts that these alleged failures of disclosure "prevented plaintiff

from taking appropriate discovery and prepare for the issues at trial in violation of Superior Court Civil Rule 16 and Superior Court Rule 26(e) related to supplemental discovery."

Once again Plaintiff's view of the record is misguided. Dr. Budway's disclosure did list the various records he reviewed and the disclosure specifically stated "DE Neurosurgical group records (which includes MRI reports/imaging)" and "based on the medical records and imaging, it more likely than not that plaintiff had degenerative condition."[5] This disclosure was more than adequate to put Plaintiff on notice of Dr. Budway's proposed testimony.

Plaintiff's experts had the imaging records available for review and could have been asked to comment on them. Plaintiff's argument that he would have taken additional discovery had he known these facts rings hollow when one considers that Plaintiff never took the discovery deposition of Dr. Budway. Finally, to raise this issue at this point in the proceedings, and not at trial, comes too late.[6] Defendant's disclosure regarding Dr. Budway was proper, timely and in no way prejudiced Plaintiff in the presentation of his case.

I now turn to the real crux of Plaintiff's motion where he maintains that the jury's verdict is manifestly and palpably against the weight of the evidence. Not

---

[5] Docket Item 54, Exhibit B, Expert Witness Disclosure of Dr. Matthew Budway at 2.
[6] *See* Super. Ct. Civ. R. 59.

so. The jury was confronted with two very different views of the facts presented. From Plaintiff's point of view, the injuries were serious and long lasting. From Defendant's viewpoint, the injuries were limited in duration and not serious or long lasting and in part pre-existing. There was ample evidence to support a conclusion that the treatment was limited and the effects of the injuries were short term and no more than an aggravation of a preexisting condition. Among the reasons supporting such a view of the evidence is the limited treatment following the accident; the lack of treatment after the 8 month mark following the accident; plaintiff's noncompliance with treatment, inconsistencies in his testimony regarding his restrictions; and finally, the lack of an opinion by any expert in the case that the plaintiff's accident related injuries were permanent. All of these facts support the jury's finding of a $5,000 verdict.

The instant Motion calls to mind the words of Judge Slights:

> "One must wonder why an institution so soundly and regularly criticized on motions for new trial is so widely demanded upon initiation of a lawsuit." The rhetorical question posed by Judge Babiarz in *Esry* exposes the fallacy which frequently surfaces in motions for new trial when the movant's showcase argument attacks the adequacy of the jury verdict. Indeed, when considering a motion for new trial, this Court is ever-mindful of the substantial effort that is expended to accommodate a litigant's demand for a trial by jury. First and foremost, fourteen citizens of this state are asked to interrupt their lives to consider evidence and resolve a dispute that has nothing to do with them. Then, court personnel are assigned to orient, accommodate, feed, escort and protect the jury. And finally, the Court and counsel exert substantial energy to create a set of suitable voir dire questions at the outset of the trial, and suitable jury instructions at the close of the trial.

While certainly not dispositive of the issue, the strict standard of review by which a motion for new trial is measured no doubt recognizes that it is the parties themselves who elect to present their claims to a jury of their peers and, by so doing, it is the parties who activate the machinery which is our jury trial system. When the parties activate the jury trial system, they activate the risk inherent in the system. And, of course, trials by jury implicate the most risky element of dispute resolution-uncertainty.[7]

Mr. Carpenter's complaint demanded a jury trial. He got one and it was fair. Now unhappy with the result, he asks this Court to supplant the jury or at least ignore it. The Court will not do this where the trial was fair and the verdict not shocking. Those of us involved in the justice system cannot and should not make litigation risk free.

For the above reasons Plaintiff's Motion for a New Trial is DENIED.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:  File&ServeXpress

---

[7] *Dunkle v. Prettyman*, 2002 WL 833375 (Del. Super. 2002)